Louis Wight *et al.*

*v.*

Michael Sampter *et al.*

*Filed at Ottawa January 25, 1889.*

1. Trust—*whether a trust arises—one creditor receiving assignment of other securities, whether he takes as trustee for another creditor.* A partnership firm being indebted to A in the sum of $25,000 and to B in the sum of $15,000, and in failing circumstances, it was agreed by the parties that A should advance to the debtor firm $15,000 and B $5000, which was done, and judgment notes were given by the debtors, to A for $40,000, and to B for his $15,000 and further advances, but the note to A was left with the debtor firm, who agreed to enter judgment thereon if necessary to protect A. Afterward B, by persuasion and threats, obtained possession of A's note, and took steps for the entry of judgment on his own notes. To prevent this, A agreed to guarantee the payment of $10,000 of the debt of B, and that if judgment should be entered for the balance of B's debt, it should have priority over any judgment in favor of A. New notes were given to B, $10,000 of which were guaranteed by A, and all the notes were left with an attorney under a letter of direction, signed by A and B, that no judgment should be taken on any of them without the order of A. The debtor firm afterward gave judgment notes to other persons, and notified A of that fact, and induced him to accept notes and accounts, or run the risk of getting nothing. The guaranteed notes were paid, and part of the residue due to B, who obtained judgment for the balance, and by creditor's bill sought to coerce payment of his judgment from A, on the ground that A held the notes and accounts assigned to him, as trustee: *Held,* that a decree holding A liable was erroneous, and that the bill should have been dismissed.

2. Contract—*strict construction, in equity.* Where one of two creditors of a failing firm, by unfair means, gains an advantage over the other, and thereby secures a contract giving him certain preferences, the party so obtaining the preferences will be entitled to no other than a strict construction of the contract, in a court of equity, and it will not be extended so as to prevent the other creditor from accepting other securities for his protection, voluntarily given by the debtor.

3. Parol evidence—*to vary written contract.* A and B, two creditors of a firm, entered into an agreement that the former should guarantee to the latter a part of his debt, and thereupon the debtor gave new notes to them, as to a portion of which A gave a written guaranty, of

payment, and both the creditors left their notes with an attorney, with a letter of instructions, signed by them, describing the notes, and reciting therein, "we retain you as our attorney in connection with the same. * * * We hereby jointly and severally instruct and direct you to take no action whatever on said notes, or any or either of them, and not to enter judgment thereon until instructed so to do by the said" A, or his agent: *Held,* that the notes, the guaranty, and the letter of instructions, constituted the written contract of the parties, A and B, and that parol evidence was not admissible to vary, alter, add to or contradict its terms, and, therefore, it was not competent for B to show an oral agreement of A to pay his claim out of any notes and accounts he might thereafter receive from the debtor firm.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

This is a bill filed on December 28, 1885, in the Circuit Court of Cook County by the appellees, Michael Sampter, Otto Sampter, Arnold Sampter, Morris Sampter and Sigmund Simon, composing firm of M. Sampter Sons & Co. of New York City, against appellants Lewis Wight and J. Franklin Wight, members of the firm of Wight Brothers of Boston, Massachusetts, and Amalie Beak, Alfred Bucher, Mrs. Alfred Bucher, Joseph Ullman, Simon Minchrod, Seth F. Hanchett, ——— Hecht. The bill was finally dismissed as to the five defendants last named. Amalie Beak and Alfred Bucher prosecuted no appeal from the decree of the Circuit Court, which was in favor of the complainants below. This appeal is prosecuted by the Wights alone from the judgment of the Appellate Court, which affirmed the decree of the Circuit Court.

Answers were filed by the Wight Brothers, by Amalie Beak and by Alfred Bucher and wife, to which general replications were filed.

The bill, as originally filed and as subsequently amended, is, so far as the principal defendants, Beak and Bucher, are concerned, an ordinary creditor's bill, praying for discovery of assets, injunction, receiver, etc. It alleges that complain-

ants recovered a judgment by confession for $9943.00 on December 28, 1885, in the Superior Court of Cook Co., against Beak and Bucher, upon which there was due, when the bill was filed, the sum of $7716.40 ; that execution had been issued on the same and returned unsatisfied ; that on December 26, 1885, judgments by confession were entered up in the same court against Beak & Bucher, one for $27,200.00 in favor of said Ullman, and one for $8400.00 in favor of said Minchrod ; that, under executions, issued upon the last named judgments, the Sheriff of Cook County had levied upon, and then had in his hands, the stock in trade of Beak & Bucher, who were carrying on a wholesale fur and cloak business in Chicago ; that such stock is insufficient to satisfy the executions so levied upon it ; that Beak & Bucher had a large number of outstanding accounts against parties in Illinois and other States, some of which have been assigned to Wight Brothers and some remain unassigned ; that, on August 10, 1885, complainants, being creditors of Beak & Bucher, to the amount of about $20,000.00 and being desirous of forcing the collection of their claim, made what is alleged to be "an agreement partly oral and partly evidenced by writing" with Wight Brothers, who were also creditors of Beak & Bucher to the amount of about $40,000.00, but were opposed to beginning legal proceedings against them, by the terms of which complainants agreed to abstain from legal proceedings, and, in consideration thereof, Wight Bros. agreed to and did guarantee $10,000.00 of the debt due to complainants from Beak & Bucher, and Wight Bros. are also alleged to have agreed "to take charge of" the balance of the claim of complainants represented by a judgment note, dated August 10, 1885, for $9706.40, and "force it against said principal defendants whenever they, Wight Bros., would find it necessary to do so for the interests of" complainants ; that this arrangement was known to Beak & Bucher ; that complainants thereafter looked to Wight Bros. to protect their interests ; that the assignment of the said accounts to

Wight Bros. on December 26, 1885, in liquidation of their own indebtedness against Beak & Bucher, was in fraud of the rights of complainants; that Wight Bros. intended thereby to collect their own claim and leave that of complainants uncollected; that complainants are "equitably entitled either to have a portion of said claims or all of them assigned to them;" that "Wight Bros. are trustees for orators in that behalf" and have no property in Illinois subject to execution; that the accounts so assigned are believed to be from $20,000.00 to $30,000.00; that the Ullman judgment was entered for more than was due; that the Minchrod judgment did not represent a bona fide indebtedness; that the Wight Bros. are interested in such judgments, and the amount of such interest should go to complainants, and to the extent thereof Ullman and Minchrod are trustees for complainants; that Beak & Bucher have no property except said stock and accounts; that Beak & Bucher owned a retail store and stock of goods therein at Milwaukee, Wisconsin, and have transferred said stock to one Hecht, their employe, and manager, in fraud of their creditors, etc. The prayer of the bill is that Hecht be enjoined from interfering with the stock and that Wight Bros. be enjoined from removing the books of account out of the jurisdiction and from collecting or assigning the accounts.

The answer of Wight Brothers admits that the judgment in favor of complainants was rendered, but charges that the debt represented by it had been paid and satisfied, and that an alias execution had been issued upon it, which was then in the sheriff's hands subject to executions in favor of Henry G. Savage and Ullman and Minchrod; alleges, that the Minchrod judgment was entered for the benefit of complainants at the request of Beak & Bucher, and that the Sheriff has realized out of the property of Beak & Bucher and applied upon the execution issued upon the Minchrod judgment the sum of $3337.17, and that $3337.17 of said amount has been paid to and received by complainants; that, when complainants'

judgment was entered, the sheriff was in possession of the stock of Beak & Bucher under an execution in favor of Savage for $2857.60, being a first lien, and the executions in favor of Ullman and Minchrod, the latter being second liens and sharing *pro rata* as between the two; that, on December 28, 1885, complainants began an action on the case for $5000.00 damages against Wight Brothers in the Circuit Court, which action is still pending and involves the same matters involved in the present suit; further alleges, that, on December 26, 1885, Beak & Bucher sold and assigned all their book accounts and two notes owned by them to Wight Brothers in payment of $25,000.00 of an indebtedness of $32,422.70 then due to Wight Bros. from Beak & Bucher; that Wight Bros. have no security for the remaining $7422.70 of their indebtedness which is still due to them from Beak & Bucher; that the value of said accounts and notes is less than the $25,000 paid off by their assignment; admits that defendants signed the written directions, dated August 10, 1885, and hereinafter set forth, to the attorneys of complainants, and that they guaranteed $10,000.00 of complainants' claim against Beak & Bucher, which has since been paid; but the answer denies, that Wight Bros. made any agreement in relation to the balance of complainants' claim, to-wit: the note for $9706.40, except as contained in the writing of August 10, 1885; denies that defendants agreed to take charge of the claim for $9706.40 or to force it against Beak & Bucher, or that they did so, but avers that said claim was put into the hands of complainants' own attorneys, to whom also Wight Bros. entrusted their own notes under said written directions; alleges, that complainants and their attorneys collected $2000.00 of said $9706.40; denies that defendants have any interest in the Ullman and Minchrod judgments, or that the assignment of the accounts was in fraud of the rights of complainants, or that defendants have taken any action against Beak & Bucher upon their own notes mentioned in the writing of August 10, 1885, or that

they knew of the Ullman and Minchrod notes until December 26, 1885; denies that Wight Brothers are trustees for complainants or that complainants are entitled to any of said accounts. The answer of Wight Brothers further sets up the arrangement of March 10, 1885, and the circumstances connected with the execution of the writing of August 10, 1885, substantially as stated in the opinion.

The answer of Alfred Bucher is the same as that of Wight Brothers; it further alleges, that Beak & Bucher, on December 26, 1885, being embarrassed and unable to go on in business, and owing Savage $2700.00, Ullman $22,483.45, (then supposed to be $26,200.00), Wight Brothers $32,422.70, Sampter Sons & Co. $7716.40, assigned to Wight Brothers two notes of $2500.00 each, received from Hecht in payment for the Milwaukee stock, and all the book accounts, in return for a cancellation of $25,000.00 of indebtedness, and confessed judgments in favor of Savage, Ullman and Minchrod, the first to be a first lien on the stock and the last two to be a second lien sharing pro rata, and that the Minchrod judgment represented the debt due to complainants; that the Milwaukee stock was fairly sold to Hecht for $10,000, which has been used in payment of debts; that $3737.17 has been realized on the Minchrod judgment and paid to complainants and accepted by them, etc.

It was afterwards agreed that the attorneys of appellants should collect the accounts and notes so assigned, and it is admitted, that $19,000.00 have been collected.

The Circuit Court, in its decree, found the allegations of the bill to be true, and that, after August 10, 1885, Wight Brothers stood in a relation of trust towards complainants as to the claim of the latter against Beak & Bucher; that, on December 26, 1885, Wight Brothers could have made the claim of complainants out of Beak & Bucher's assets but failed to do so, that by collusion they received claims amounting to the actual value of about $20,000.00 and used the same in payment of

their own debt; that Wight Brothers on August 10, 1885, had agreed to first pay complainants' claim out of the claims that might be assigned to them; that Wight Brothers were bound to hold the notes and claims assigned to them in trust to first pay complainants and then to pay themselves; that $19,000.00 have been collected and $3337.17 paid; it is then decreed, that Wight Brothers and Beak and Bucher pay to complainants $4773.00, the balance due to them from Beak & Bucher, "which sum has come to the hands of said Wight Brothers from the assets of said Beak & Bucher; and which, in equity, they now hold in trust for the said complainants."

The following agreement in the form of a letter was executed by the subscribers on August 10, 1885:

"CHICAGO, *August 10th, 1885.*
"Messrs. . . . . . . . . . . . . . . *Attorneys at Law:*

"GENTLEMEN—We have this day deposited with you the following notes of Beak & Bucher, of Chicago, Illinois, and retain you as our attorneys in connection with same:

"First—The note for $9706.40, dated Chicago, August 10th, 1885, payable to the order of M. Sampter Sons & Co., one day after date, with power of attorney to confess judgment thereto annexed.

"Second—Note for forty thousand dollars, dated Chicago, March 14th, 1885, payable to the order of Wight Brothers, due one day after date, with warrant of attorney to confess judgment thereto annexed.

"Third—Note for ten thousand dollars, dated Chicago, August 10th, 1885, payable to the order of Wight Brothers, one day after date, with warrant of attorney to confess judgment thereto annexed.

"We hereby jointly and severally instruct and direct you to take no action whatever on said notes, or any or either of them, and not to enter judgment thereon until instructed so to do by the firm of Wight Brothers, or some member of said firm, or by the agent thereof. In case judgment is entered

on said notes or any of the same, at any time hereafter, under said instructions or otherwise, you are directed and instructed to prefer said claim of M. Sampter Sons & Co. over said claim of said Wight Brothers, and to make said claim of said M. Sampter Sons & Co. a lien upon the property of said Beak & Bucher prior to said claim of Wight Brothers, or any members thereof.

(Signed)

M. SAMPTER SONS & CO.,
WIGHT BROTHERS."

The following guarantee was executed on August 10, 1885:

"For and in consideration of the sum of one dollar to us in hand paid, the receipt of which is hereby acknowledged, and in further consideration of the extension of the time of payment of ten thousand dollars of the amount of the indebtedness due at this time from Messrs. Beak & Bucher of Chicago, Illinois, to Messrs. M. Sampter Sons & Co. of New York, the evidences of which indebtedness are now surrendered and cancelled, which said extension is shown by five certain promisory notes hereinafter described, and in consideration of the benefit accruing to the firm of Wight Brothers of Boston, Massachusetts, as creditors of said Beak & Bucher, from such extension, that said firm of Wight Brothers, and J. Franklin Wight, a member thereof, do hereby jointly and severally guarantee the payment at maturity of each and all of the following promissory notes of Beak & Bucher, about to be executed by said Beak & Bucher and delivered to M. Sampter Sons & Co., concurrent with the execution of this guaranty and by reason of the same:

"First—The note of B. & B. for two thousand dollars, dated Chicago, July 14th, 1885, payable three months after date.

"Second—Note of B. & B. for two thousand dollars, dated Chicago, July 21st, 1885, payable three months after date.

"Third—Note of B. & B. for two thousand dollars, dated August 7th, 1885, payable three months after date.

"Fourth—Note of B. & B. for two thousand dollars, dated Chicago, August 13th, 1885, payable three months after date.

"Fifth—Note of B. & B. for two thousand dollars, payable three months after date.

"Failure to pay any one of said notes at maturity shall constitute a breach of this guaranty.

"Witness our hands this 10th day of August, 1885.

WIGHT BROTHERS,

J. FRANKLIN WIGHT."

It furthermore appears from the evidence that in December, 1885, Beak & Bucher executed judgment notes to three of their creditors, Savage, Ullman, Minchrod, the latter for the benefit of M. Sampter Sons & Co.; that, on December 26, 1885, the attorneys of Beak & Bucher had the papers prepared, necessary to the entry of judgments on said notes, so as to give Savage the first lien on the stock and Ullman and Minchrod the second liens thereon, and, during the forenoon of that day, J. F. Wight was for the first time informed by Bucher and his attorneys of the existence of said notes, and was told that judgments were to be entered up in favor of Savage, Ullman and Minchrod in the afternoon, and that unless he accepted the accounts and Hecht notes in payment of $25,000.00 of his indebtedness he would get nothing, and that all the arrangements were perfected to enter such judgments before judgments could be entered on the notes mentioned in the letter of August 10, 1885, by the attorneys to whom the same was addressed; that thereupon the accounts were assigned to Wight Brothers, and they cancelled $25,-000.00 of their indebtedness against Beak & Bucher; that in the afternoon of December 26, 1885, judgments were entered in favor of Savage for $2857.60, Ullman for $27,200.00 and Minchrod for $8400.00; that the stock of Beak & Bucher was at once levied upon, and, from the proceeds of such levies, Savage has been paid in full, and the balance of the proceeds

divided pro rata between Ullman and M. Sampter Sons & Co.; that the amount received by the latter from such proceeds is $3300.00 or thereabouts.

So much of the balance of the testimony, as is necessary to understand the points involved, is set forth in the opinion.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellants:

For any misfeasance or non-feasance of an agent or trustee, resulting in damage to the principal or *cestui que trust*, a suit at law is the proper remedy. *Doyle* v. *Murphy*, 22 Ill. 502; *Steele* v. *Clark*, 77 id. 471; *Hun* v. *Cary*, 82 N. Y. 70.

An action of assumpsit will lie against a trustee, at the suit of the *cestui que trust*, for money received or property disposed of by him, the same being the money or property of the *cestui que trust*. *Catlin* v. *Birchard*, 13 Mich. 110.

A party having obtained a contract by fraud or unfair means, can have no relief from a court of equity, based on such contract. *Fortier* v. *Darst*, 31 Ill. 212; *Cathcart* v. *Robinson*, 5 Pet. 264; *Tamm* v. *Lavalle*, 92 Ill. 263; *Thorp* v. *McCullum*, 1 Gilm. 614; *Taylor* v. *Merrill*, 55 Ill. 52.

The reason why equity will decree specific performance of a contract is, because damages at law may not, in the particular case, afford an adequate remedy. 2 Story's Eq. Jur. secs. 717, 716, note 2; *Duff* v. *Fisher*, 15 Cal. 381.

Equity will not decree specific performance of a contract respecting personalty. (*Pierce* v. *Plumb*, 74 Ill. 326.) Nor contracts for personal services. (*Hamblin* v. *Dunneford*, 2 Edw. 529; *Stocher* v. *Brockelbank*, 3 M. & G. 266.) Nor of a contract that is uncertain and indefinite. (*Hassutt* v. *Yielding*, 2 Sch. & Lefr. 554; *Blanchard* v. *Railroad Co.* 31 Mich. 44; *Bowman* v. *Cunningham*, 78 Ill. 48.) Nor one that lacks mutuality, or is unconscionable. *Lear* v. *Choteau*, 23 Ill. 39; *Cathcart* v. *Robinson*, 5 Pet. 264; *Marble Co.* v. *Ripley*, 10 Wall. 339; *Railroad Co.* v. *Railroad Co.* 57 Pa. St. 65.

A trust is defined to be an equitable right, title or interest in property, real or personal, distinct from the legal ownership. 2 Story's Eq. Jur. sec. 964.

Three things are necessary to constitute a trust: First, sufficient words to raise it; second, a definite subject; and third, a certain or ascertained object. 2 Story's Eq. Jur. sec. 964; *Crewys* v. *Coleman,* 9 Ves. 319.

A court of equity will not assume jurisdiction on the ground of a trust, in cases where a mere confidence is reposed or a credit given. *Doyle* v. *Murphy,* 22 Ill. 502; *Taylor* v. *Turner,* 87 id. 296; *Gibson* v. *Decius,* 82 id. 304; *Ashley* v. *Denton,* 1 Litt. 87; *Steele* v. *Clark,* 77 Ill. 471; *Douglass* v. *Martin,* 103 id. 25.

A trust will not be decreed on the ground of fiduciary relations existing between parties, when the purchaser pays his own money and takes title to himself, unless the person towards whom the fiduciary relation existed had some interest, or at least some claim or reasonable expectation of interest, in the property claimed to be affected with the trust. *Rogers* v. *Simmons,* 55 Ill. 76.

No fiduciary relation was created between Sampter and Wight by reason of the contract entered into between them, and none was assumed by Wight. *Hall* v. *Joiner,* 1 Rich. 186.

The rule in equity is, that persons standing in a fiduciary relation can not deal on their own account with the thing or the persons falling within that trust or relation. *Dennis* v. *McCagg,* 32 Ill. 429; *Norris* v. *Taylor,* 49 id. 17.

It is a general rule of law that when parties have deliberately put their engagements in writing, in such terms as import a legal obligation, without any uncertainty as to the object or the extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing. *Emery* v. *Mohler,* 69 Ill. 221; *Weaver* v. *Fries,* 85 id. 356; 2 Wharton on Evidence, sec. 1014.

Parol evidence is inadmissible to vary, alter or change the terms of such contracts.   Ibid., and *Boorman* v. *Jenkins*, 12 Wend. 574; Greenleaf on Evidence, sec. 275; *Railroad Co.* v. *Brant*, 17 Bradw. 151.

Mr. E. A. OTIS, for the appellees:

To show that a trust existed in the appellants in favor of the appellees, in respect to the notes and accounts, see *Davis* v. *Hamlin*, 108 Ill. 49; Kerr on Fraud and Mistake, (Bump's ed.) 151, 179; *Reed* v. *Peterson*, 91 Ill. 295; Perry on Trusts, 166; *Beach* v. *Dyer*, 93 Ill. 295; *Doyle* v. *Wiley*, 15 id. 576; *Trotter* v. *Smith*, 59 id. 240.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On December 26, 1885, appellants were bona fide creditors of Beak & Bucher to the amount of $32,422.70, and, on that day, cancelled and discharged $25,000.00 of such indebtedness by receiving from Beak & Bucher an assignment of notes and book accounts, amounting upon their face to something over $27,000.00, but not shown to have been actually worth more than $25,000.00, and upon which it is conceded that only $19,000.00 had been collected when the decree in this cause was entered.   On the same day, appellees were bona fide creditors of Beak & Bucher to the amount of $7716.40, which indebtedness had been reduced, at the date of the said decree, to $4773.00, the latter amount being the sum, which appellants are ordered by the decree to pay to appellees.

The question presented for our determination is this:   Did the appellants hold the notes and accounts assigned to them, or the proceeds of their collection, in trust for appellees upon such terms that they were bound, first to apply the same to the payment of the $4773.00 due to appellees, and the balance to the payment of the $32,422.70 due to themselves, or were appellants entitled to keep and apply the whole of such notes

and accounts, or the proceeds thereof, upon their own indebtedness without paying anything to appellees? The theory of the bill, and upon which the decree is based, is, that appellants occupied a trust relation towards appellees, and, by reason thereof, could not appropriate to their own use any of the notes and accounts of Beak & Bucher that might come into their hands, until they had first paid the claim of appellees against Beak & Bucher. We think that this theory was an erroneous one under the facts disclosed by the record.

On December 26, 1885, Henry G. Savage and Joseph Ullman were also bona fide creditors of Beak & Bucher. As a part of the arrangement, by which the notes and accounts were used to pay the sum of $25,000.00 to appellants, Beak & Bucher also made provision, by confessing judgments and suffering executions to be issued thereon, for the distribution of the proceeds of the sales of their stock in trade between Savage, Ullman and appellees, Savage to be first paid in full, and Ullman and appellees to be next paid pro rata. The distribution so provided for was carried out, and appellees accepted $3300.00 as their share of the proceeds of the stock sales. That part of the arrangement made by Beak & Bucher which disposed of the stock, is not interfered with by the decree, and the attack upon it was abandoned by the dismissal of the bill as to the parties interested in it.

The claim of the trust relation is based upon an agreement made between appellants and appellees on August 10, 1885. Before discussing this agreement it will be necessary to review the circumstances, out of which it grew, and which led up to its execution.

Early in March, 1885, Beak & Bucher telegraphed to appellants at Boston and to appellees at New York to come to Chicago, as they were in a failing condition and could not continue their business without help. They then owed appellants $25,000.00 for goods purchased, and appellees $15,000.00 for money borrowed. The wife of Michael Sampter was a

sister of Amalie Beak's husband and an aunt of Bucher's wife. At Chicago on March 9 or 10, 1885, it was agreed between Michael Sampter, J. F. Wight and Bucher, that appellants should advance to Beak & Bucher $15,000.00, and that appellees should advance to them $5000.00, and that appellants and appellees "would carry Beak & Bucher along in good shape," and, in doing so, would act in unison and in good faith towards each other, putting their interests together and neither taking any advantage of the other. The advances were made as agreed during the following spring. On March 9, 1885, appellees held the judgment notes of Beak & Bucher for the $15,000.00 loaned to them, and obtained other judgment notes for the subsequent advances. On March 14, 1885, Wight Brothers received from Beak & Bucher a judgment note for $40,000.00 to cover the existing indebtedness of $25,000.00, and the advances of $15,000.00 afterwards made, but confiding in the integrity of Bucher, they left the $40,000.00 note in his possession with the understanding that he should have judgment entered upon it, in case financial disaster should suddenly come upon his firm.

Michael Sampter swears that it was agreed between Wight and himself in March, 1885, that the appellees should be preferred, and that their indebtedness should be paid first in case the advances of $20,000.00 should be insufficient to prevent the failure of Beak & Bucher. Wight and Bucher deny this. They both swear that nothing was said at the March interview about preferring the Sampters in the event of a suspension. We think the weight of the evidence is against the existence of any agreement at that time for the preference of appellees.

During the spring of 1885, Arnold Sampter became informed of the fact, that Wight Brothers had left their judgment note for $40,000.00 in the hands of Beak & Bucher.

On August 10, 1885, Arnold Sampter was in Chicago. In the forenoon of that day he placed the judgment notes of appellees in the hands of his attorneys with directions to prepare

the papers for the entry of judgment on that day. He went to Bucher and secured possession of the note for $40,000.00 belonging to appellants. He only obtained it by much persuasion and after repeated declinations on the part of Bucher. He says himself in his testimony : "I asked for it and insisted upon having it. I bulldozed him out of it; * * * I thought I kind of had Mr. Wight when I had possession of that note." In the afternoon of the same day he again went to Beak & Bucher and threatened to take judgment and close them out. He refused securities they offered him to prevent his doing so. He then went in company with Bucher to the Palmer House to see J. F. Wight, who was stopping there. Wight says : "Mr. Sampter informed me that he had instructions from his father (Michael) to enter up judgment notes immediately against Beak & Bucher, that the papers were all prepared to do it in case it was necessary, and also that he had my judgment note."

The evidence shows that Wight Brothers would have lost nearly all of their large claim of $40,000.00, if the stock of Beak & Bucher had been levied upon at that time. J. F. Wight was undoubtedly taken at a disadvantage. The papers were ready for the entry of judgment upon the Sampter notes. His own judgment note for $40,000.00 was beyond his control, in the hands of Sampter or Sampter's attorneys. Under these circumstances Wight agreed that he would guarantee the payment of $10,000.00 of the indebtedness due from Beak & Bucher to the Sampters, and that, if judgment should be entered up in favor of the Sampters for the balance of such indebtedness, it should have priority over any judgment to be entered by Wight Brothers on their note. In consideration of this agreement, Arnold Sampter consented to refrain from taking the action, which he had threatened, and he and J. F. Wight and Bucher went on the evening of the same day to the office of Sampter's attorneys to have the agreement reduced to writing.

On that evening the old judgment notes given by Beak & Bucher to appellees were cancelled and left with the attorneys. Five new notes of $2000.00 each, dated on different days in July and August 1885, and payable to the order of appellees in three months after date, were executed by Beak & Bucher and turned over to Sampter. The payment of these five notes was guaranteed by a separate written contract of guaranty dated August 10, 1885, and signed by Wight Brothers and by J. Franklin Wight. A judgment note of same date, payable to the order of appellees, for $9706.40, being the balance due the Sampters over and above the guaranteed notes, was executed by Beak & Bucher. A judgment note for $10,000.00 was also made by them to appellants to secure them in case they should be obliged to pay the five guaranteed notes. The judgment note for $40,000.00, which had not left the hands of Arnold Sampter since he obtained it from Bucher, the judgment note for $9706.40, and that for $10,000.00, were put into the possession of the attorneys, and a letter of instructions was drawn up addressed to said attorneys, dated August 10, 1885, and signed by "M. Sampter Sons & Company" and "Wight Brothers." This letter describes the three notes last named, recites that they are deposited with the attorneys, and contains the following language: "We * * * retain you as our attorneys in connection with the same. * * * We hereby jointly and severally instruct and direct you to take no action whatever on said notes, or any or either of them, and not to enter judgment thereon until instructed so to do by the said firm of Wight Brothers, or some member of said firm, or by the agent thereof," etc.

The notes, the guarantee and the letter of directions constitute the contract of August 10, 1885, as reduced to writing. The trust relation contended for is alleged to spring from this contract. In view of the manner, in which its execution by Wight Brothers was brought about, it is entitled to no other than a strict construction from a court of equity.

The letter of directions to the attorneys was signed by appellants and appellees, not by Beak & Bucher. It placed no restrictions upon the latter as to the mode, in which they should dispose of their assets, or provide for their creditors. It said nothing upon its face about the assignment of accounts or notes. If it imposed any obligation upon appellants to pay the claim of appellees out of such notes and accounts as Beak & Bucher might choose to turn over to them, such obligation was not expressly enjoined, but is mere matter of inference. Is it a fair and legitimate inference from the language of the letter, that appellants would receive no notes or accounts from their debtors except for the benefit of appellees?

The letter directs the attorneys not to enter judgment either upon the note of $9706.40 belonging to appellees, or upon the note of $40,000.00 belonging to appellants, until they are instructed to do so by Wight Brothers. The only power conferred upon Wight Brothers by the letter is simply the power to instruct the attorneys when to enter judgment. As to what was to be done after the entry of judgment, in the way of preferring the claim of appellees over that of appellants and making it a prior lien upon the property of Beak & Bucher, these were matters to be looked after by the attorneys, and were not within the control of Wight Brothers.

It is a fact that appellants never did give any instructions to have judgment entered either upon their own note or upon that of appellees, but we see nothing in the evidence to show that they were, for that reason, guilty of any intentional wrong towards appellees. Beak & Bucher and their counselors, without the knowledge or aid of appellants, made preparation for confessing judgments in favor of Savage, Ullman, and Minchrod, the latter for the use of appellees, and then sent for Wight and forced him to take the notes and accounts or run the risk of getting nothing. Did appellants receive such notes and accounts affected with a trust in favor of appellees, because, without fault on their part, no instructions had been given to

· enter up judgments upon the notes mentioned in the letter of August 10, 1885? There was nothing in that letter, which prohibited Beak & Bucher from making a payment to Wight Brothers on December 26, 1885. They owed appellants a debt, and they had a right to pay that debt, in whole or in part, either with money, or with notes and accounts. Did not appellants have a corresponding right to accept such payment when offered?

As matter of fact, Beak & Bucher paid, to appellees $12,-000.00, and to appellants about $7000.00, between August 10 and December 26, 1885. Appellees knew that Beak & Bucher were making payments of money to appellants from time to time in the summer and fall of 1885 and made no objection to such payments.

The evidence and the arguments of counsel show clearly, that the provision, which forbade the attorneys from entering judgment until instructed to do so by appellants, was inserted in the letter for the benefit of appellants. By guaranteeing $10,000.00 of the claim of appellees, appellants virtually increased their own claim against Beak & Bucher from $40,000.00 to $50,000.00. At the conference on the evening of August 10, J. F. Wight stated that the Sampters would have it in their power to enter up judgment on their note for $9706.40 and levy on the stock, and then hold appellants liable upon their guarantee for the remaining $10,000.00 of the Sampter claim. It was to avoid the possibility of such a result as this, that Wight Brothers were given the privilege of saying when judgment should be entered.

The fact that the attorneys were to prefer the claim of appellees by making the judgment "a lien upon the property of Beak & Bucher" shows, that the stock alone, and not the notes and accounts, were in the contemplation of the parties when the letter was signed. The judgment could not be made a lien upon the accounts.

The only notes received by Wight Brothers were two notes of $2500.00 each given to Beak & Bucher by one Hecht for the purchase of the Milwaukee store. In regard to this store Arnold Sampter says in his testimony: "I believe that was to be transferred over to Mr. Wight, as we did not want to have anything in that line of business on our hands and he was in the business." If Wight Brothers were to have the store, it could make no difference that they received, in stead thereof, a part of the proceeds of the sale of the store.

Realizing the difficulty of so interpreting the written contract as to make the notes and accounts trust property thereunder, the appellees attempted to prove, that, on August 10, 1885, appellants made an oral agreement to pay the claim of the Sampters out of whatever accounts they might thereafter receive. If it were allowable to introduce testimony for such a purpose, it can not be said that the evidence, which was permitted to come in, establishes the existence of any such oral agreement as is contended for.

Bucher swears that no other agreement was made than that which was reduced to writing. J. F. Wight swears to the same thing, and furthermore says: "The subject of accounts was not brought up before us that night at all. * * * The question of the accounts being assigned for the benefit of M. Sampter Sons & Co. never came up—never was mentioned between us in all our conversations from beginning to end." Arnold Sampter, when asked what was said about the assignment of the accounts, answers: "I can not exactly recollect how that was to be done. In case any attachment was put upon the stock, our claim was to come first." A clerk of the attorneys who drew the letter was present on the night of August 10, and says: "I do not think I have stated that there was an agreement with reference to the book accounts. * * * It was contemplated at that time that the stock was all that was necessary to secure these claims." One of the three attorneys, to whom the letter was addressed, says: "I do not recollect

that any distinct proposition was made that the accounts should be assigned to Wight. It was not understood or spoken of that they should be assigned to Sampter.   *   *   *   I did not personally contemplate having anything to do with the accounts at the time that document was prepared." There are only two other witnesses who testify upon this subject. Their evidence tends to support the theory of appellees, but we think it is overborne by the weight of the opposing testimony. One of these witnesses was not present at any of the interviews on August 10, but speaks of remarks made long after that date.

The evidence also fails to show any oral agreement by Wight to assume the collection of the claim of appellees. The attorney last referred to says: "Neither Wight nor any one told me that he agreed to collect Sampter's claim."

But we are of the opinion that the testimony to show the oral agreement was not competent, under the rule that parol evidence is inadmissible to vary, alter, add to or contradict the terms of a written contract. The parties here undertook to put their engagement in writing, and it will be presumed that the writing expresses their whole engagement and the extent and manner of their undertaking. It has not been intended by any of the expressions or language made use of in this discussion to pass any opinion upon the validity or invalidity of the general method adopted by Beak & Bucher for providing for their creditors. This decision concerns only the relations between appellants and appellees.

The decree of the Circuit Court and the judgment of the Appellate Court are reversed, and the cause is remanded to the Circuit Court with directions to dismiss the bill.

*Judgment reversed.*


Mr. JUSTICE BAILEY, having heard this cause in the Appellate Court, took no part in its decision here.